Wilkin, J.
The city sued the telephone company for a percentage of the latter’s receipts for the year 1904, upon a contract pursuant to the ordinance of the city, wherein the telephone company agreed to pay a percentage of its gross receipts annually in consideration of a grant to the latter company of the privilege to use the streets and other püblic ways for the period of twenty-five years, for the purpose of digging trenches and laying conduits therein necessary to successfully construct and operate a telephone exchange, toll lines and police and fire-alarm system. The telephone company installed its system, and thereafter paid to the city the stipulated percentage of the gross receipts according to contract for the years 1901, 1902 and 1903, but upon demand for the percentage for 1904, refused to pay.
The companjr answered the petition, setting up two defenses. The major proposition of law upon *468 which the answer rests is that the city is without the power tó demand or receive compensation for the use of its streets or other public ways beyond what may be necessary to restore the pavement to its former state. Section 9179, General Code. Another section provides that the mode of such use shall be such as is agreed upon between the city and the company; and-if they can not agree, the probate court shall direct in what mode the telephone line shall be constructed along such streets or public ways, so as not to incommode the public. Section 9178, General Code.
It has been decided 'by this court that “The statutes of Ohio do not confer power on the probate court to grant to a telephone company the right-to put its wires and apparatus in conduits under the streets of a city in the absence of consent by the municipal authorities.” Queen City Telephone Co. v. City of Cincinnati, 73 Ohio St., 64. Therefore these sections do not apply to an agreement for the use of subsurface conduits.
There is a statute which provides that gas, electric and water companies may lay conductors for supplying- gas, electricity and water through the streets, lands and squares of a city, with the consent of the municipal authorities, under such regulations as they may prescribe. Section 9320, General Code. And this court has held that the council of the city may require a gas company, to which it grants the right to lay its pipes and other appliances in the streets and other public places, to pay annually to the city a reasonable sum to compensate for the city’s necessary supervision after as well as during the construction of the *469 system; and when the company accepts the terms of the grant according to law and occupies the streets under such grant, such acceptance becomes a valid contract between the parties for the annual payment of said sum; and also that a provision in the grant that said payments are “for the benefit of the gas and light fund,” does not render the ordinance invalid as a means to raise general revenue, said clause being subordinate to the principal obligation. City of Columbus v. Columbus Gas Co., 76 Ohio St., 309.
Now it is true that the statute last referred to does not ex vi termini apply to telephone companies. Nor does the statute upon which the telephone company relies in this case apply to the kind of use which the company makes of the public avenues of the city of Columbus. The plant which it installs in the streets of the city is analogous to that of gas companies. 'By the statute law of the state, municipalities are required to keep their streets open, in repair and! free from nuisance, and they are liable in damages for injuries caused by their failure so to do. In this respect a system of subsurface conduits is very different from overhead lines upon poles, as it casts upon the city greater labor, care and expense. By analogy, therefore, the stipulation for annual compensation in the contract in the case at bar, is as reasonable and should be as valid' as the stipulation in the ordinance in the case last cited. It is a reasonable exercise of the power of the municipal corporation to exercise care and control of its streets and public areas.- Section 3714, General Code. The last clause of Section *470 9320, “under such reasonable regulations,” being in the nature of a limitation upon the power of the. municipality to confer upon private companies the use of its thoroughfares, by inference enjoins upon the city the duty to make proper provision for the cost of supervision and repairs rendered necessary by the operations of such companies in and under its streets. Compare Section 9170-i, General Code.
It follows therefore that the legal proposition of the telephone company, which is the major premise of its defense, is untenable, and the demurrer to its answer upon that ground was justly sustained.
The other proposition underlying the second' defense is that the payments of a percentage of the gross receipts of the telephone company is a tax for a general revenue, which is unauthorized. This proposition is based upon a clause in the ordinance, and in the contract pursuant thereto, that the company shall “pay into the city treasury for the use of the' general expense fund of the city, a percentage on its- gross receipts,” etc. This court has held in the case of City of Columbus v. Columbus Gas Co., supra, that such a clause does not render the ordinance invalid, and of course it should not nullify the contract. In that case the annual stipend was by ordinance transferred to the “general expense fund.”
In their brief counsel for the company hark back to the time when the company applied for this grant and when this ordinance was passed, and assert that the company was “held up.” This would be a petty and futile plea of duress if it *471 were set forth in the answer. The argument in the company’s brief that this clause was ah unjust “exaction,” because a rival company might be permitted to use the streets without • being subject to such payment, is not legitimate and is not proper for our consideration. See second proposition of the syllabus, City of Columbus v. Columbus Gas Co., supra.
The debtor company accepted the grant and acquiesced in its terms during three years, and has enjoyed all its privileges and emoluments. The company was free to promise the annual payment or refuse the grant. Certainly the demand for a debt thus voluntarily incurred as a recompense for a grant can with no propriety be called a tax in any sense. A tax is imposed by sovereign power; it creates an involuntary obligation.
The company alleges that it did not recognize the legality of this obligation, because it paid for . the years 1901, 1902 and 1903 under protest in writing. The answer to this proposition is found in the syllabus to Mays v. City of Cincinnati, 1 Ohio St., 268, viz.: “To make the payment of an illegal demand involuntary, it must be made to appear that it was made to release the person or property of the party from detention, or to prevent a seizure of either by the other party having apparent authority to do so without resorting to an action at law.” It does not so appear.
The company by its answer and in its brief makes the point. that the stipulation for the payment of a percentage of its earnings was no part of the consideration for the grant or for recompense for the use of the streets, because by the *472 provisions of the ordinance and by the covenants in the contract pursuant thereto the company was bound to restore the streets to as good condition as they were in prior to the operations of the company, under the direction and to the approval of the city engineer; and on failure so to do the city engineer might do such work and collect the expenses thereof, with cost of collection, from the company. And the company also gave bond in $50,000, with sureties, conditioned that it shall indemnify .the city against loss and liability for any claims against the city for injury to persons or property growing out of the enjoyment of the privileges granted; and that the company shall perform all the conditions of said contract on its part to be performed.
A sufficient reply to this argument is that these covenants do not cover all the duties and liabilities which devolve upon the city from the construction of this telephone and fire-alarm system beneath her streets; she had a right to stipulate for recompense for the extra burden of supervision and repair after the plant was installed and the streets were restored to their former condition. This right is recognized, by implication at least, in the case which counsel for the company cite to support their point. City of Zanesville v. Zanesville Telephone & Telegraph Co., 64 Ohio St., 67.
The demurrer to the second defense was properly sustained. The judgment of • both courts below should be affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue, Wanamaker and Newman, JJ., concur.